

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Judson T. Mihok
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
Judson.Mihok@usdoj.gov

January 26, 2012

Bradley L. MacFee
1424 East Joppa Road
Towson, MD 21286

Re:   Plea Agreement in United States v. Leo Aragon Evans ELH 11-0577

Dear Mr. MacFee:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by February 8, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Count One of the Indictment charging him with Production of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a), and Count Five, which charges him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.  The elements of the Counts to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Revised 11/5/09

Count One: Production of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct:

That on or about the date specified in Count One of the Indictment, in the District of Maryland, the Defendant:

a. Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

b. For the purpose of producing a visual depiction of such conduct; and

c. The Defendant had reason to know that the materials used to produce the visual depictions were transported in interstate and foreign commerce.

Count Five: Possession of Child Pornography:

a. That on or about January 12, 2011, the Defendant knowingly possessed and accessed a visual depiction with intent to view;

b. That the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

c. That the visual depiction was of one or minors engaged in sexually explicit conduct; and

d. That the Defendant knew of the sexually explicit nature of the material and that the visual depictions were of actual minors engaged in that sexually explicit conduct.

3. Penalties

a. The sentence provided by statute for each of the offenses to which your client is pleading guilty is as follows: Count One ((Production of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct) not less than fifteen (15) years and not more than thirty (30) years imprisonment, a $250,000 fine, and supervised release for 5 years to life; and Count Five (Possession of Child Pornography) not more than ten (10) years imprisonment, a $250,000 fine, and supervised release for 5 years to life. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless,

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

        b.      The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

<u>Waiver of Rights</u>

        4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

        a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges

against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

  6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

  a. <u>PRODUCTION–VICTIM ONE</u>

    (i) The base offense level is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

    (ii) Pursuant to U.S.S.G. §2G2.1(b)(1), there is a four (4) level increase because the victim was under the age of 12 at the time of the offense.

    (iii) Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because there was commission of a sexual act or sexual contact.

    (iv) Pursuant to U.S.S.G. §2G2.1(5), there is a two (2) level increase because the minor was in the custody, care or supervisory control of the defendant.

    **The offense level, therefore, is forty (40).**

  b. <u>PRODUCTION–VICTIM TWO</u>

    (i) The base offense level is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

    (ii) Pursuant to U.S.S.G. §2G2.1(b)(1), there is a four (4) level increase because the victim was under the age of 12 at the time of the offense.

    (iii) Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because there was commission of a sexual act or sexual contact.

    (iv) Pursuant to U.S.S.G. §2G2.1(5), there is a two (2) level increase because the minor was in the custody, care or supervisory control of the defendant.

    **The offense level, therefore, is forty (40).**

  c. <u>PRODUCTION–VICTIM THREE</u>

    (i) The base offense level is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

    (ii) Pursuant to U.S.S.G. §2G2.1(b)(1), there is a four (4) level increase because the victim was under the age of 12 at the time of the offense.

    (iii) Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because there was commission of a sexual act or sexual contact.

    (iv) Pursuant to U.S.S.G. §2G2.1(5), there is a two (2) level increase because the minor was in the custody, care or supervisory control of the defendant.

    **The offense level, therefore, is forty (40).**

d.  POSSESSION (COUNT FIVE)

(i) Pursuant to U.S.S.G. § 2G2.2(a)(1) of the United States Sentencing Guidelines, the base offense level is 18.

(ii) Pursuant to U.S.S.G. §2G2.2(b)(2), the offense level is increased by two (2) levels because the material involved multiple images of prepubescent minors who had not attained the age of 12 years.

(iii) Pursuant to U.S.S.G. §2G2.2(b)(5), the offense level is increased by five (5) levels because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

(iv) Pursuant to U.S.S.G. §2G2.2(b)(7)(B), the offense level is increased by three (3) levels because the offense involved 150 or more images of child pornography.

**The offense level, therefore, is twenty-eight (28).**

e.  COMBINED OFFENSE LEVEL

Pursuant to U.S.S.G. §§1B1.2 and 3D1.4, the above-referenced groups do not group. The guidelines count as one unit the group with the highest offense level and count as one additional unit each group that is equally serious or from 1 to 4 levels less serious and to count as one-half unit any group that is from 5 to 8 levels less serious. Therefore, the adjusted offense levels for the Production of Child Pornography of 40, are increased by 3 offense levels and the U.S.S.G. for Possession of Child Pornography, since it is nine (9) levels less serious, is disregarded. U.S.S.G. §3D1.4(c). Thus, the highest offense level (40) is increased by three (3) offense levels.

**The offense level, therefore, is forty-three (43).**

7. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**The final base offense level, therefore, is forty (40).**

8.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9.     This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, there should be a no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

10.    At the time of sentencing, this Office will recommend a reasonable sentence, which takes into account the advisory U.S.S.G. range and the sentencing factors outlined at 18 U.S.C. § 3553(a), and will move to dismiss any open counts against the Defendant.

11.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

12.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the applicable U.S.S.G. range provided for at the Defendant's Criminal History and an adjusted **base offense level of 43**; and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the applicable U.S.S.G. range provided for at the Defendant's Criminal History and an adjusted **base offense level of 40**.

   c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from

7

appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

       d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

      13.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

      14.      The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Forfeiture

15. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on/after January 12, 2011. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

## Entire Agreement

16. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Judson T. Mihok
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2-8-12
Date

_____
Leo Aragon Evans

I am Leo Aragon Evans's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2.8.12
Date

_____
Bradley L. MacFee

9

## ATTACHMENT A-STATEMENT OF FACTS

The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Leo Aragon Evans, age 56, is a resident of Cockeysville, Maryland.

On January 10, 2011, a 9 year old female, hereinafter referred to as Jane Doe 1 reported to a Baltimore County Police Officer that the defendant had repeatedly sexually abused her over the past year. Jane Doe 1 disclosed that the defendant would tickle her which would turn into him fondling her vagina and buttocks. Jane Doe 1 also described two "massagers" (i.e., sexual devices commonly referred to as vibrators) the defendant had at his residence (one yellow and one black), and how the defendant would tell her to rub the "massagers" on her vagina, over her clothes. These acts occurred while Jane Doe 1 and another minor female who was 10 years old, hereinafter referred to as Jane Doe 2, were in the care, custody and supervisory control of the defendant and, sometimes, at the defendant's residence.

Further investigation revealed that the defendant had been the subject of three prior investigations into sexual abuse/misconduct involving minor females: (1) in May 1996, a 4 year old female, hereinafter Jane Doe 3, reported that the defendant had engaged in oral sex with her; (2) in September 1997, a 5 year old female, hereinafter Jane Doe 5, reported that the defendant had rubbed her buttocks and asked to see her underwear at the after school daycare she attended; and (3) in October 2003, a 15 year old female, hereinafter Jane Doe 4, reported that the defendant had taken inappropriate pictures of her approximately seven years prior while she was naked and taking a bath, and that she was concerned the defendant had also sexually abused another minor female.

On or about January 12, 2011, Baltimore County police officers executed a search and seizure warrant at the defendant's residence. Among the items seized from the apartment include, but are not limited to, a Canon ES180 8mm video camcorder and two Sony Hi8 tapes. Review of the two Hi8 video tapes showed that both depicted images of minors engaged in sexually explicit conduct; the tapes were produced outside the state of Maryland and therefore, affected interstate or foreign commerce.

The first video tape was taken by the defendant and contains videos of Jane Doe 1 and Jane Doe 2. In one video, the defendant asks Jane Doe 2 to show her buttocks, and Jane Doe 2 complies by pulling her pants down and spreading her buttocks open as the defendant records images of her anus. Continuing in the same video, the defendant tells Jane Doe 2 to turn "the other way" and Jane Doe 2 complies, and the defendant records images of her vagina. As Jane Doe 2 is pulling up her pants, the defendant then tells Jane Doe 2 "let's see" and "do it again."

The second video tape taken by the defendant is of Jane Doe 1 and Jane Doe 2 in a bathtub and the defendant tells Jane Doe 1 and Jane Doe 2 to stand up for the purpose of filming their naked bodies. The defendant continues to record as Jane Doe 2 spreads her legs and exposes her vagina.

The same day the search warrant was executed, the defendant was interviewed regarding the allegations of Jane Doe 1, and the defendant denied any wrongdoing. The defendant did acknowledge "tickling" Jane Doe 1 and Jane Doe 2, which the defendant stated sometimes led to incidental and unintentional contact with their pubic areas and buttocks. Continuing on the same date, the defendant was arrested and charged in Baltimore County, and thereafter held at the Baltimore County Detention Center.

On January 19, 2011, Pamela Shaw contacted the Baltimore County Police Department and reported that she had used the key she had to the defendant's apartment to retrieve a large amount of her personal possessions that she stored there. While at the apartment to retrieve her personal possessions, Ms. Shaw observed a bag on the computer table in the defendant's apartment which she recognized as his overnight bag. When Ms. Shaw opened up the overnight bag she found two "massagers" or sexual devices more commonly referred to as vibrators, which matched the descriptions given by Jane Doe 1; the items were turned over to the Baltimore County Police Department.

On April 16 and 17, 2011, the defendant's sister entered his condominium with his permission to search for family photos and other items of sentimental value as the defendant remained detained at the Baltimore County Detention Center. While at the apartment, the defendant's sister came across a blue baggie containing several photographs as well as Polaroid images. The baggie was mixed in with some t-shirts in a dresser next to the defendant's bed. The photographs in the baggie had been taken by the defendant and depicted Jane Doe 2, Jane Doe 3 and Jane Doe 4, at a time when they were prepubescent females, several of which depicted Jane Doe 2, Jane Doe 3, and Jane Doe 4 engaged in sexually explicit conduct; in fact, the photographs taken of Jane Doe 4 matched the description of the photographs that she had reported in 2003 which had been taken by the defendant some 7 years prior. These items were also turned over to the Baltimore County Police Department.

One photograph taken by the defendant depicted Jane Doe 2 when she is approximately five years old in the bathroom of his condominium. Jane Doe 2 is laying on the floor, her hands are on her stomach, her legs are spread apart and the focal point of the photograph is her vagina. The photograph was taken and printed on Polaroid film which has never been produced in Maryland, and therefore produced using materials that had traveled in or affected interstate or foreign commerce.

A second photograph taken by the defendant depicted Jane Doe 2 when she is approximately five years old. Jane Doe 2 is wearing a top with a leopard print and is not wearing any pants or underwear. Jane Doe 2 is straddling the defendant and the defendant's penis is touching Jane Doe 2's exposed vagina. The photograph was taken and printed on Polaroid film which has never been produced in Maryland, and therefore produced using materials that had traveled in or affected interstate or foreign commerce.

      I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

2-8-12  
Date

_____  
Leo Aragon Evans

2·8·12  
Date

_____  
Bradley L. MacFee